UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JAVIER HERMOSILLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:10-CV-00198-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**Statement of the Case**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Plaintiff Javier Hermosillo seeks judicial review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income. The United States District Judge transferred this case to the United States Magistrate Judge for further proceedings. The undersigned provided Hermosillo with an opportunity to consent to the jurisdiction of the United States Magistrate Judge, but he did not do so. Pursuant to the order of assignment, the undersigned now files this Report and Recommendation.

On July 14, 2008, Hermosillo applied for disability insurance benefits and SSI. On October 1, 2008, Hermosillo's application for disability was denied. Reconsideration was denied on December 5, 2008. On June 12, 2009, the Administrative Law Judge (ALJ) held a hearing and issued an unfavorable opinion on August 29, 2009. Specifically, the ALJ held that Hermosillo did not have an impairment or combination of impairments that met or medically equaled one of the

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 and had the residual functional capacity to perform sedentary work, with additional special limitations. Relying on the testimony of a vocational expert, the ALJ also concluded that jobs exist in significant numbers in the national economy that Hermosillo is capable of performing. The Appeals Council denied review on June 29, 2010. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Factual Background

Hermosillo previously worked as a correctional officer, plant supervisor, a cook, and a pusher/laborer. (Tr. 107.) He alleges that he became disabled on July 1, 2007, following a work accident in which he slipped on a wet floor in late March 2007. (Tr. 102, 222.) On April 4, 2007, he sought treatment for his work-related injury and was diagnosed with a sacroiliac joint strain. (Tr. 221–23.) Hermosillo worsened and was given work restrictions on April 30, 2007, which included sitting for no more than two hours of an eight-hour day, walking for no more than two hours of an eight-hour day, no climbing stairs or ladders, and no lifting or carrying more than twenty pounds for more than eight hours per day. (Tr. 215.)

On May 3, 2007, Hermosillo was seen by Dr. Richard Trifilo who determined that Hermosillo had a lumbosacral strain. (Tr. 196–98.) Hermosillo exhibited only mild tenderness to palpitation in the lateral lumbar paraspinals and gluteal musculature, had functional lumbar range of motion, had no muscle spasms, and bilateral straight leg raises were negative. *Id.* Dr. Trifilo gave new work restrictions, which included sitting for no more than two hours of an eight-hour day;

walking for no more than two hours out of an eight-hour day; no bending, stooping, or twisting; no lifting or carrying anything over twenty pounds; and sitting or stretching breaks up to five times per hour. (Tr. 196–99.) During a May 17 follow-up appointment, Dr. Trifilo noted there was no radiation, no muscle spasms or atrophy, and the lumbar range of motion was functional; specifically, Hermosillo's lumbar flexion was 90 degrees, extension was 20 degrees, left side bending was 30 degrees, and right side bending was 30 degrees. (Tr. 201.)

A CT scan was later ordered due to Hermosillo's worsening symptoms, including some radiating pain. (Tr. 204–05.) The CT scan showed bulging discs at several levels with a possible protrusion at L5-S1 and moderately severe to severe spinal stenosis at L5-S1. (Tr. 188.)

Hermosillo's radiating symptoms continued to worsen, and by June 29, 2007, he was reporting that he had constant back pain with intermittent radiation down both legs. (Tr. 206–11.) On July 10, 2007, he was seen by one of Dr. Trifilo's partners who recommended Hermosillo receive epidural steroid injections, after which he experienced some improvement. (Tr. 281–83, 291–93.)

During an October 2007 follow-up appointment with Dr. Trifilo, the record reflects that Hermosillo had diminished sensation and decreased reflexes. (Tr. 269.) Hermosillo was seen by Dr. James Tyler for an evaluation of Hermosillo's impairment rating, maximum medical improvement date, extent of his compensable injury, and ability to return to work. (Tr. 244.) Dr. Tyler diagnosed Hermosillo with lumbago, right piriformis syndrome, sacroiliac joint dysfunction with pelvic tilt secondary with altered structural mechanics, right hip synovitis, and lumbar disc herniation. (Tr. 249.) The doctor noted that Hermosillo had a mild antalgic gate, straight leg raises from a seated position were 40 degrees on the right and 55 to 60 degrees on the left, and his lumbar

flexion was 48 degrees, extension was 26 degrees, right lateral flexion was 24 degrees, and left lateral flexion was 25 degrees. (Tr. 249.) Dr. Tyler found the following work restrictions appropriate: standing, sitting, squatting, kneeling, or walking for a maximum of four hours in an eight-hour day; bending, stooping, or twisting for a maximum of two hours in an eight-hour day; no climbing ladders; no lifting or carrying more than ten to fifteen pounds for more than six hours per day; and no working more than an eight-hour day. (Tr. 297.)

A functional capacity evaluation was completed on December 13, 2007. Hermosillo was found to be able to perform medium work and lift up to thirty pounds at an occasional rate. (Tr. 260–64.) At a follow-up appointment after the functional capacity evaluation, Dr. Trifilo noted that Hermosillo's gait was mildly antalgic, straight-leg raises were negative, lumbar flexion was 65 degrees, extension was 15 degrees, side bending to the left was 20 degrees, and side bending to the right was 20 degrees. (Tr. 257–58.)

During an August 2008 follow-up appointment, Hermosillo reported feeling more instability when he walked and requested a cane. Hermosillo was seen for a follow-up appointment on November 3, 2008, and it was noted that he was experiencing improvement of the radiating symptoms since beginning a new medication. (Tr. 375–76.) The following month, Hermosillo was still using a cane and his lumbar flexion was 40 degrees, extension was 5 degrees, and side bending in both directions was 20 degrees. (Tr. 381–82.) On June 4, 2009, muscle testing revealed mild weakness in Hermosillo's right leg flexors and straight leg raises were positive on the right side. (Tr. 383–84.)

**Standard of Review**

A plaintiff is disabled if he is unable "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (2011).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2011). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's residual functional capacity (RFC). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Judicial review of a decision by the Commissioner is limited to two inquiries: "whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision to deny benefits." *Audler*, 501 F.3d at 447; 42 U.S.C. § 405(g) (2011) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th

Cir. 1990).

## Discussion

Hermosillo argues that substantial evidence does not support the ALJ's determination. (Pl.'s Br. 1.) Specifically, Hermosillo argues that the Commissioner failed (1) to properly evaluate the issue of presumptive disability at Step 3 of the sequential evaluation of disability, (2) to consider all of Hermosillo's severe impairments, (3) to consider medical expert opinion, and (4) to establish the existence of work which Hermosillo can perform at Step 5 of the sequential evaluation of disability. *Id.* at 1–2.

### I. The ALJ's Step 3 Determination

The claimant bears the burden of proof at Step 3 of the sequential analysis. To satisfy this burden, the claimant must produce medical findings that support each of the criteria of the listing at issue. *See Selders*, 914 F.2d at 619 (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). If the ALJ determines that the claimant has met the burden and that the medical severity of the claimant's impairment meets or equals the criteria of one of the listed impairments in Subpart P, Appendix 1 of the Commissioner's regulations, disability is presumed and the evaluation ends in the claimant's favor. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2011); *see also Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000). An ALJ must discuss the evidence offered in support of a claim and explain why he or she does not find the claimant disabled at Step 3. *Audler*, 501 F.3d at 448 (relying on 42 U.S.C. § 405(b)(1), which explicitly requires a discussion of the evidence offered in support of a claim and a statement of the reason or reasons for the determination). The ALJ is not required to do an exhaustive point-by-point analysis, but he or she must offer support for the conclusion reached. *Id.* The Court of Appeals for the Fifth Circuit has held that bare conclusions in a Step 3 determination

prevent a reviewing court from determining whether substantial evidence supports the decision of the ALJ.[1] *Id.* Even if a court determines that the ALJ failed to state the reasoning for an adverse determination at Step 3, a reviewing court must still evaluate whether the error was harmless. *Id.*

In the present case, at Step 3 the ALJ stated, "I also find the claimant's musculoskeletal impairments do not result in compromise of a nerve root or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis of listing level security. Therefore, they do not meet or equal listing 1.04." (Tr. 13.) While the ALJ did specifically list the impairment in question, he did not provide any discussion of the evidence or any explanation of how he determined that Hermosillo's symptoms were not severe enough to meet § 1.04. As in *Audler*, the ALJ's statement is a bare conclusion, and the court cannot determine whether it is supported by substantial evidence or not.

Even having determined that it was error for the ALJ to fail to state the reasons for his Step 3 determination that Hermosillo did not meet § 1.04, the court must continue to a harmless error analysis. *Id.* Procedural perfection is not required in administrative hearings, and a court will not vacate a judgment unless "the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Hermosillo argues that his disability meets the requirements for § 1.04. That section addresses, in relevant part, spinal stenosis or a herniated nucleas pulposus with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by

---

[1] In *Audler*, the ALJ had stated, "The medical evidence indicates that the claimant has status post lumbar laminectomy, cervical disc herniation, headaches and chronic neck and back pain, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." 501 F.3d at 448.

sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (2011). Further, to demonstrate the required loss of function, Hermosillo must show an "inability to ambulate effectively on a sustained basis . . . or the inability to perform fine and gross movements effectively on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2) (2011).

The record reveals that Hermosillo has moderately severe to severe spinal stenosis with symptoms of nerve root compression, as detailed in § 1.04(A). Beginning approximately one and a half months after his initial injury, he consistently reported lower back pain radiating down through his right leg (neuro-anatomical distribution of pain). (*See, e.g.,* Tr. 204–05, 206–07, 210–11, 246, 291–93, 381.) Hermosillo also evidenced decreasing range of motion throughout the medical records. (*See, e.g.*, Tr. 210–11, 244–49, 254–56, 381–82.) The medical records frequently document sensory or reflex loss. (Tr. 269, 281, 289, 292, 368.) On June 4, 2009, muscle weakness was documented in the right leg flexors. (Tr. 383–84.) In the same record, Hermosillo exhibited positive straight leg raises. *Id.* Additionally, he uses a cane and the majority of the medical records indicate that his gait is antalgic. (Tr. 244–49, 257–58, 254–56, 260–64, 368–69, 379–80, 381–82.) The records provide evidence that Hermosillo must take stretching or sitting breaks to experience relief from pain, and at times, he reported pain when standing for ten to fifteen minutes. (Tr. 291, 311.)

No medical evidence contradicted these findings, and absent an explanation from the ALJ, it appears that Hermosillo met his burden of showing that he meets the requirements of § 1.04(A). *See Audler*, 501 F.2d at 449. Accordingly, Hermosillo's rights were substantially affected by the ALJ's failure to set out the reasons for his decision at Step 3 of the sequential evaluation.

Because Hermosillo's claim should be remanded for further proceedings at Step 3, it is not necessary to reach his remaining arguments.

## Conclusion

For the foregoing reasons, this court recommends that the United States District Court **REVERSE** and **REMAND** the Commissioner's decision for further administrative proceedings consistent with this opinion.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2011); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:	September 12, 2011.

_____
NANCY M. KOENIG
United States Magistrate Judge